[No. 15885. Department One. January 25, 1921.]

## L. TEWELES SEED COMPANY, *Appellant,* v. FRANK M. FAIRBANKS *et al.,* *Respondents.*[1]

SALES (113)—WARRANTIES—BREACH—WARRANTY OF QUALITY. Findings that peas complied with a contract calling for Canadian yellows of "good stock, in good merchantable condition" are not sustained, where many samples were taken from the shipment and all the witnesses admitted that the samples did not comply with the contract as to quality, kind or condition.

SAME (164)—REMEDIES OF BUYER—EVIDENCE—ADMISSIBILITY. Upon an issue as to the quality of peas, the trade custom to have samples taken by a disinterested person is not exclusive, and does not prevent an interested party from taking samples.

SAME (165)—REMEDIES OF BUYER—DAMAGES—DIFFERENCE BETWEEN PRICE PAID AND MARKET VALUE. Where defective peas shipped from Seattle could not be examined until their arrival at Milwaukee, and were rejected, held subject to the shipper's order, and finally sold on the open market in Milwaukee for what they would bring, the measure of the buyer's damages is properly based upon the market price at Milwaukee.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered December 2, 1919, upon findings in favor of defendants, dismissing an action on contract, tried to the court. Reversed.

*Lucas C. Kells,* for appellant.

*J. Grattan O'Bryan,* for respondents.

BRIDGES, J.—A contract for the sale by the defendant to the plaintiff of certain peas, was embodied in the following communications:

Seattle, April 19, 1918.

L. Teweles Seed Co.,
    Milwaukee.

For immediate telegraphic acceptance offer sell two cars choice stock Canadian yellows five three quarters fob cars here certified weights immediate shipment.          F. M. Fairbanks & Co.

[1] Reported in 195 Pac. 40.

11—114 WASH.

Milwaukee, 4-20-18.

F. M. Fairbanks & Co.,
        Seattle, Wash.
    Five fifty utmost can pay.        -    L. Teweles Seed Company.

Seattle, April 20, 1918.

Teweles Seed Co.,
        Milwaukee, Wis.
    We accept five and half fob cars Seattle Canadian yellow peas providing you accept three cars about forty tons each immediate shipment from Seattle certified weights usual terms.    Wire reply quick.

F. M. Fairbanks & Co.

4-22-18.

F. M. Fairbanks & Co.,
        Seattle, Wash.
    We booked the three cars.    Be sure quality is satisfactory.    If any more to offer advise.                    L. Teweles Seed Co.

CONTRACT CONFIRMATION.

Seattle, Wash., April 22, 1918.

L. Teweles Seed Company,
    .    Milwaukee, Wis.
Gentlemen:
    We confirm sale to you today of 3 cars Canadian yellow peas at 5½c per pound, f. o. b. Seattle for immediate shipment, weights certified.    Payment demand draft against bills of lading.    Remarks: Peas to be good stock in good merchantable condition.

Yours truly,

F. M. Fairbanks & Co.,

Per F. M. Fairbanks.

Accepted: L. Teweles Seed Company,
        By Max Teweles.

Pursuant to this contract, and within a few days after it was made, the defendant loaded three cars with peas, all of them being in sacks supposed to weigh 125 lbs. each.    In one car were 650 sacks, in another 660 and in a third 690, making in all 2,000 sacks.    The cars thus loaded were shipped by the usual bills of lading to Milwaukee, the place of business of the plaintiff. All these bills of lading with drafts attached were forwarded by the defendant to a bank in Milwaukee, which

collected from the plaintiff the amount of the drafts and surrendered to it the bills of lading. Within a few days thereafter, the cars reached Milwaukee, where, for the first time, the plaintiff examined the peas and claimed they were not in accordance with the contract. It claimed to have found in the three cars 291 sacks of inferior peas. It accepted the remainder of the peas as complying with the contract. It notified the defendant of the defective condition of the peas and told him they were in Milwaukee for his disposal. The defendant did not take any action in this regard, and the plaintiff sold the peas which it claimed were defective on the open market at Milwaukee for an amount considerably less than it had paid therefor.

It made up its claim against the defendant in the following manner: It charged him with $14,851.10, being the amount of the drafts paid, and credited him with $13,999.05, being the combined purchase value of the peas accepted as complying with the contract and the amount received for the defective peas, thus leaving a difference of $852.05, for which amount it later sued the defendant. The case was tried to the court without a jury. There were findings in favor of defendant and a judgment dismissing the action. The plaintiff has appealed.

The appellant claims that it bought from the respondent "choice Canadian yellow peas." The respondent contends that he sold "good peas, in good merchantable condition." It is true the telegrams exchanged between the parties were with reference to choice peas, but these telegrams were only preliminary to the final agreement or letter signed by both the parties, and dated April 22. That instrument was the final contract of the parties, and it expressly provided that the peas were to be of "good stock, in good merchantable condition."

The chief contention between the parties to the trial was whether the respondent had shipped to appellant peas of "good stock, in good merchantable condition." Appellant offered much evidence tending to show that many of the sacks of peas were not such as were contracted for; that some of them were musty, discolored and split; that others were not Canadian yellow peas at all; that the whole shipment contained much dirt and screenings; that in one car there were 2,190 lbs. of dirt and screenings beside 106 sacks of inferior peas; that in another car there were 68 sacks of inferior peas and more than 2,200 lbs. of dirt and screenings; that in the third car there were 117 sacks of poor peas and 2,300 lbs. of dirt and screenings.

At the trial in Seattle, the appellant produced many samples of defective peas which it testified were taken in the usual manner from each sack of defective peas. Practically all the witnesses, either for the plaintiff or defendant, admitted that the peas shown in the samples did not comply with the contract. But respondent contends that the samples were not taken from the peas which he had shipped. He had no other proof of this assertion than that he had not shipped any such peas. The court, however, found that the samples used at the trial were taken from the sacks of peas which the defendant had shipped.

We have very carefully read the testimony, and while we realize that it is our duty to give favorable consideration to the findings of the trial court, we are unable to agree with those findings because, to our mind, they are clearly against the preponderance of the evidence. It would not serve any useful purpose for us to recite the testimony in detail. Suffice it to say that we are fully convinced that many of the peas were discolored, split and musty; that they contained

an undue quantity of dirt and screenings; that some of them were not "Canadian yellow peas;" that many of the sacks contained peas of very inferior quality, and that those which appellant rejected were neither "good peas," nor "in merchantable condition." It seems to have been proven almost beyond controversy that the samples used at the trial were taken from the sacks shipped by respondent, and the trial court so found, but no witness, not even the respondent himself, contended that the samples complied with the contract.

Respondent claims that the custom of the trade is to have the chamber of commerce or some other disinterested person take the samples. But that custom, if it exist, is not exclusive. There is no reason why appellant should not take the samples. This it appears to have done in the usual manner by removing from each sack of defective peas, a small portion of the contents. Practically all the testimony shows that these samples were taken in a fair manner. Under all the testimony, we must hold that the peas which appellant rejected did not comply with the contract.

There is some argument in the briefs as to whether the measure of damages should be based on the market price at Seattle or the market price at Milwaukee, of the defective peas. The peas were shipped from Seattle to Milwaukee, the place of business of the appellant. Before they reached that city, appellant had no opportunity to examine them. When it found they were defective, it notified respondent and informed him that it held the peas for his order. Later the appellant did the only thing it could do, and that was to sell the peas in the open market at Milwaukee for the market price at that point. This it had the right to do.

The judgment is reversed and the cause remanded with instructions to the lower court to enter judgment for the appellant in the amount sued for.

PARKER, C. J., HOLCOMB, MACKINTOSH, and FULLERTON, JJ., concur.